**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | | |
|---|---|---|
| Jacques Jeanlouis, | : | Case No. 3:04 CV 7702 |
| Plaintiff, | : | |
| v. | : | |
| Product Action, et al., | : | **MAGISTRATE'S REPORT AND RECOMMENDATION** |
| Defendants. | : | |

This employment discrimination case, filed pursuant to 42 U.S.C. § 1981 and OHIO REV. CODE § 4112.01, was referred to the undersigned Magistrate for report and recommendation. Pending is Defendants' unopposed Motion for Summary Judgment (Docket No. 50), Supplement (Docket No. 51) and Motion for Ruling (Docket No. 54). For the reasons that follow, the Magistrate recommends that Defendants' Motions for Summary Judgment and for Ruling be granted.

**FACTUAL BACKGROUND**

Plaintiff, a black male residing in Oregon, Ohio, was formerly employed by Defendant Product Action International, LLC (Product Action) (Docket No. 1). Plaintiff was employed as a quality control inspector. Defendant Product Action, a quality control service provider, is located on Telegraph Road, Toledo, Ohio. Defendant Laurie Bentley is employed by Defendant Product Action.

Plaintiff was involved in numerous incidents on the job that led to an investigation of his actions. One incident occurred on June 6, 2003, when Plaintiff was counseled on his failure to meet

his quota and raising his voice. In another incident, Christine Phillips, a fellow employee, reported to the human resources supervisor that Plaintiff had made a threat to shoot the warehouse coordinator, Kenny Strong. Christine Phillips and Kenny Strong notified management that Plaintiff has used profanity when addressing them.

On June 10, 2003, Plaintiff's supervisor wrote an employee occurrence sheet punishing him for being late. On a separate yellow sheet, the supervisor further provided a detailed explanation of circumstances surrounding Plaintiff's tardiness. Plaintiff took the original employee occurrence sheet and explanation sheet. Plaintiff's supervisor composed another employee occurrence sheet noting that Plaintiff had taken the original occurrence sheet.

Ultimately, Plaintiff was suspended pending an investigation for gross insubordination and making threatening remarks to the supervisor. A hearing was conducted on July 2, 2003. During the hearing, Plaintiff was asked about the June 10, 2003, employee occurrence sheet and its whereabouts. Plaintiff admitted that he had the notice and showed it to everyone at the hearing. He was advised that the employee occurrence sheet was company property. He returned the employee occurrence sheet but refused to return the attachment, a yellow explanation sheet. He left the premises. Defendant Product Action's human resources personnel discharged Plaintiff on July 7, 2003 (Docket No. 51).

## PROCEDURAL BACKGROUND

Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC). The EEOC adopted the decision made by Defendant Product Action, closed the file on August 23, 2004, and advised Plaintiff of his right to appeal the adverse decision. Plaintiff filed this case on November 4, 2004. Pending is Defendants' Motion for Summary Judgment.

## SUMMARY JUDGMENT STANDARD

The standard governing summary judgment is set forth in FED. R. CIV. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Stated otherwise, summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby,* 106 S. Ct. 2505, 2510 (1986). If the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial, summary judgment is appropriate. *Celotex Corporation v. Catrett,* 106 S. Ct. 2548, 2552 (1986); *see also Matsushita Electric Industrial Company v. Zenith Radio Corporation*, 106 S. Ct. 1348, 1356 (1986).

In responding to a summary judgment motion, the non-moving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" *Johnson v. Kindred Nursing Centers East LLC*, 2007 WL 1192357, *3 (S. D. Ohio 2007) (*quoting Liberty Lobby*, 106 S. Ct. at 2504). The non-moving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. *Id.* It is not sufficient for the non-moving party to merely "show that there is some metaphysical doubt as to the material facts." *Id.* (*quoting Matsushita*, 106 S. Ct. at 1355). Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Id.* (*citing Street v. J. C. Bradford & Company*, 886 F. 2d 1472, 1479-1480 (6th Cir. 1989)). The non-moving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. *Id.* (*citing In re Morris,* 260 F.3d 654, 665 (6th

Cir. 2001)).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the non-moving party, and must refrain from making credibility determinations or weighing the evidence. *Id.* (*citing Reeves v. Sanderson Plumbing Products*, 120 S. Ct. 2097, 2110 (2000) (citations omitted). The Court must disregard all evidence favorable to the moving party that the jury is not required to believe, *Id.*, (*citing* 9A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2529 at 299 (2nd ed.1995)), and give credence to the evidence favoring the non-movant as well as that evidence favorable to the moving party that is uncontroverted or unimpeached, at least to the extent that the evidence comes from disinterested witnesses. *Id* (*citing Liberty Lobby,* 106 S. Ct. at 2512).

### DISCUSSION

In his complaint, Plaintiff alleges that he was a reliable and responsible employee who, on or about July 17, 2003, was wrongfully terminated based on race. He claims that (1) he was denied due process as "promised in the company manual" and (2) other similarly situated white employees have engaged in similar work violations without discharge. Such allegations allege violations of 42 U.S.C. §1981 and OHIO REV. CODE § 4112.02.

Defendants claim that they are entitled to judgment as a matter of law since Plaintiff has not presented evidence that raises a genuine issue of material fact. In the alternative, Defendants claim that the falsification of Plaintiff's application for employment not only violates company policy but provides a basis in fact for his discharge. Defendants, therefore, request that this Court dismiss Plaintiff's case.

*Plaintiff's Section 1981 Claims*

Section 1981 prohibits intentional race discrimination in the making and enforcing of

contracts involving both public and private actors. *Amini v. Oberlin College*, 440 F.3d 350, 358 (6th Cir. 2006) (*citing Christian v Wal-Mart Stores*, 252 F.3d 862, 867-68 (6th Cir. 2001)). The statute provides that all persons in the United States "shall have the same right . . . to make and enforce contracts . . . as shall be enjoyed by white citizens. . . ." 42 U.S.C. § 1981(a) (Thomson/West 2007). The statute's protection extends to "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." *Id*. (*citing* 42 U.S.C. §1981 (b)). To establish a claim for racial discrimination under Section 1981, a plaintiff must show (1) he or she belongs to an identifiable class of persons who are subject to discrimination based on their race; (2) the defendant intended to discriminate against him or her on the basis of race; and (3) the defendant's discriminatory conduct abridged a right enumerated in Section 1981(a). *Id.* (*citing Christian*, 252 F.3d at 871-72).

When a plaintiff seeks to prove intentional discrimination in a Section 1981 case, a plaintiff may proceed by introducing direct evidence of discrimination or by proving circumstantial evidence which would support an inference of discrimination. *Kline v. Tennessee Valley Authority*, 128 F.3d 337, 348 (6th Cir. 1997). The direct evidence and the circumstantial evidence paths are mutually exclusive; a plaintiff need only prove one or the other, not both. *Id*.

Under the direct evidence approach, once the plaintiff introduces evidence that the employer terminated him or her because of race or other protected status, the burden of persuasion shifts to the employer to prove that it would have terminated the plaintiff even if the employer had not been motivated by discrimination. *Manzer v. Diamond Shamrock Chemicals Company*, 29 F.3d 1078, 1081 (6th Cir. 1994) (*citing Price Waterhouse v. Hopkins,* 109 S. Ct. 1775, 1787 (1989)). Direct evidence is that "evidence that proves the existence of fact without requiring any inferences." *Rowan v. Lockheed Martin Energy Systems*, 360 F.3d 544, 548 (6th Cir. 2004). The presence of direct

5

evidence in employment actions is rare. *United States Postal Services Board of Governors v. Aikens,* 103 S. Ct. 1478, 1482 (1983).

Under the circumstantial evidence approach, a three part analysis developed in the *McDonnell Douglas- Burdine* line of cases is applied. *McDonnell Douglas Corporation v. Green*, 93 S. Ct. 1817 (1973). To state a prime facie case, Plaintiff must establish that 1) he or she is a member of a protected class; 2) he or she was qualified for his or her job and performed it satisfactorily; 3) despite his or her qualifications and performance, he or she suffered an adverse employment action; and 4) that he or she was replaced by a person outside the protected class or was treated less favorably than a similarly situated individual outside his or her protected class. *Id.* at 1824.

If the plaintiff is able to establish this prima facie case, a mandatory presumption of discrimination is created and the burden shifts to the defendant to "articulate some legitimate non-discriminatory reason for the employee's rejection." *Id.* If the defendant carries this burden, then the plaintiff must prove that the proffered reason was actually a pretext to hide unlawful discrimination. *Id.* The plaintiff must then establish that the proffered reason was a mere pretext by showing that the stated reason had no basis in fact; 2) the stated reasons were not the actual reasons; and 3) that the stated reasons were insufficient to explain the defendant's action. *Id.*

After careful review of the court documents, together with Plaintiff's failure to proffer any direct evidence, the Magistrate finds that Defendants' Motion for Summary Judgment has merit. Defendants argue that Plaintiff cannot make a prima facie case for racial discrimination under Section 1981 as he has not presented any affirmative evidence sufficient to defeat a properly supported motion for summary judgment. Specifically, Plaintiff has not shown that he performed his job satisfactorily or that he was treated less favorably than a similarly situated non-protected person.

As a Haitian American who was terminated from his position, Plaintiff satisfied the first

element of the prima facie case requirement: he was a member of a protected class. Under the *McDonnell Douglas Burdine* burden-shifting analysis, Plaintiff then had the burden of proving that he was qualified for the position. The Sixth Circuit has established that to be qualified for one's position, the plaintiff must demonstrate that he or she met the employer's legitimate expectations and was performing to the employer's satisfaction. *Warfield v. Lebanon Correctional Institution*, 181 F.3d 723, 729 (6th Cir. 1999) (15017 (6th Cir. 1999) (*citing Ang v. Procter & Gamble Company,* 932 F.2d 540, 548 (6th Cir. 1991); *see also Taylor v. St. Vincent's Medical Center,* No. 97-3236, 1998 WL 211765 at *2 n. 1 & *3 (6th Cir. 1998)). Defendants offer substantial evidence showing that Plaintiff's performance was unsatisfactory. Plaintiff was ultimately suspended for gross insubordination and threatening to shoot a Product Action co-worker (Docket No. 51, Exhibit A, ¶ 27, 28, 33). He was questioned for failing to meet his quota (Docket No. 51, Exhibit A, ¶ 24) and admonished for being tardy (Docket No. 51, Exhibit A, ¶ 25). Plaintiff has not presented any evidence to raise a genuine issue of material fact that he was qualified for the position or that he was performing to his employer's satisfaction.

Nor has Plaintiff raised a genuine issue of material fact as to the fourth prong in *McDonnell Douglas Burdine* analysis. Plaintiff contends that similarly situated white personnel were given more favorable discipline than black personnel; however, he has failed to show that he was replaced by a person outside the protected class or he was treated less favorably than a similarly situated individual outside his protected class.

To establish that a fellow employee is comparable, "the plaintiff [must] demonstrate that he or she is similarly situated to the [claimed comparator] in all *relevant* respects." *Wright v. Murray Guard*, 455 F.3d 702, 710 (6th Cir. 2006) (*citing Ercegovich v. Goodyear Tire & Rubber Company*, 154 F.3d 344, 352 (6th Cir. 1998)). In the disciplinary context, the Sixth Circuit has held that to be

found similarly situated, the plaintiff and his proposed comparator must have engaged in acts of "*comparable seriousness.*" *Id.* (*citing Clayton v. Meijer,* 281 F.3d 605, 611 (6th Cir. 2002) (applying the *Ercegovich* approach to a Title VII claim) (*quoting McDonald v. Santa Fe Transportation,* 96 S. Ct. 2574, 2580 n. 11 (1976)). To make this assessment, the court may look to certain factors, such as whether the individuals "have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (*citing Ercegovich*, 154 F.3d at 352) (*quoting Mitchell v. Toledo Hospital,* 964 F.2d 577, 583 (6th Cir. 1992)). Overall, to determine whether two individuals are similarly situated with regard to discipline, we "make an independent determination as to the relevancy of a particular aspect of the plaintiff's employment status and that of the [proposed comparable] employee." *Id.*

In this case, Plaintiff has not provided any evidence in the pleadings or depositions that similarly situated employees outside of his protected class were treated differently. On the contrary, Defendants point to Plaintiff's deposition to show that the opposite is true; that there are no similarly situated employees outside the protected class. Specifically, when asked who was similarly situated, Plaintiff testified:

> Q: Okay, in your complaint, and I assume that you read this complaint before you signed it.
> A: Yes.
> Q: Okay. In paragraph 4, you say the defendants have allowed similarly situated white employees to engage in work violations without discharging them. Do you remember making that statement in your complaint?
> A: No, they might put that in there because it was not white employees. We don't… if you talk about supervisor they have a white female supervisor, but for the employees, none. We all black.

Plaintiff's Dep., p. 217, (lines 3-10, 14-15; 23-25)

These statements are fatal to Plaintiff's claim. Drawing all inferences in Plaintiff's favor, there is only one conclusion: the persons to whom Plaintiff compared himself are not outside the protected class. Thus, there is no issue of material fact as to the fourth prong of the prima facie case under 42 U. S. C. § 1981.

*Plaintiff's Claims under OHIO REV. CODE § 4112.02*

Plaintiff made identical claims of discrimination under OHIO REV. CODE § 4112.02. The same analysis used for Title VII claims is also used for Section 1981 and Ohio Civil Rights Act claims. *Thomas v. Ametech,* 464 F. Supp.2d 688, 692 (N.D. Ohio 2006) (*citing Plumbers & Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Commission*, 66 Ohio St.2d 192, 196, 421 N.E.2d 128 (1981); *Newman v. Federal Express Corporation,* 266 F.3d 401, 406 (6th Cir.2001)). Since Plaintiff cannot make a prima facie case under Section 1981, he cannot sustain the burden of proof required to make a prima facie case under OHIO REV. CODE § 4112.01. Defendants' Motion for Summary Judgment must also be granted as to these claims.

## **CONCLUSION**

Based upon the foregoing, the Magistrate finds that no issue of material fact exists. The Magistrate, therefore, recommends that Defendants' Motion for Summary Judgment be granted and the Motion for Ruling be granted.

/s/Vernelis K. Armstrong
United States Magistrate Judge

Dated: 05/07/07

9

## **NOTICE**

Please take notice that as of this date the Magistrate's Report and Recommendation attached hereto has been filed.

Please be advised that, pursuant to Rule 72.3(b) of the Local Rules for this district, the parties have ten (10) days after being served in which to file objections to said Report and Recommendation. A party desiring to respond to an objection must do so within ten (10) days after the objection has been served.

Please be further advised that the Sixth Circuit Court of Appeals, in *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981) held that failure to file a timely objection to a Magistrate's Report and Recommendation foreclosed appeal to the Court of Appeals. In *Thomas v. Arn*, 106 S. Ct. 466 (1985), the Supreme Court upheld that authority of the Court of Appeals to condition the right of appeal on the filing of timely objections to a Report and Recommendation.